| AO 10 Rev. 1/2012 | FINANCIAL DISCLOSURE REPORT FOR CALENDAR YEAR 2011 | Report Required by the Ethics in Government Act of 1978 (5 U.S.C. app. §§ 101-111) |

| 1. Person Reporting (last name, first, middle initial) Calabresi, Guido | 2. Court or Organization U.S. Court of Appeals, 2nd Cir | 3. Date of Report 07/18/2012 |
|---|---|---|
| 4. Title (Article III judges indicate active or senior status; magistrate judges indicate full- or part-time) U.S. Court of Appeals Judge, Senior Status | 5a. Report Type (check appropriate type) ☐ Nomination Date ☐ Initial ☑ Annual ☐ Final 5b. ☐ Amended Report | 6. Reporting Period 01/01/2011 to 12/31/2011 |

7. Chambers or Office Address

U.S. Court of Appeals, 2nd Cir
157 Church Street
New Haven, CT 06510-2030

*IMPORTANT NOTES: The instructions accompanying this form must be followed. Complete all parts, checking the NONE box for each part where you have no reportable information. Insert signature on last page.*

# I. POSITIONS. *(Reporting individual only; see pp. 9-13 of filing instructions.)*

☐ NONE *(No reportable positions.)*

| POSITION | NAME OF ORGANIZATION/ENTITY |
|---|---|
| 1. Sterling Professor Emeritus, Professorial Lecturer | Yale Law School, 11/01/1995 - present |
| 2. Honary Trustee - Unpaid | Carolyn Foundation, MN, 01/01/1996 - present |
| 3. Member, Scientific Committee- Unpaid | Centro Nazionale Prevenzione e Difesa Sociale, 1988 - present |
| 4. Member - Unpaid | International University College, Turin Board, 2007 - present |
| 5. | |

# II. AGREEMENTS. *(Reporting individual only; see pp. 14-16 of filing instructions.)*

☐ NONE *(No reportable agreements.)*

| DATE | PARTIES AND TERMS |
|---|---|
| 1. Present | Right to be Professorial Lecturer, Yale University, upon retirement (See Attachments A and B) |
| 2. Present | Right to use accumulated (approximately $500) research and travel fund, Yale University, even after retirement |
| 3. | |

## III. NON-INVESTMENT INCOME. *(Reporting individual and spouse; see pp. 17-24 of filing instructions.)*

### A. Filer's Non-Investment Income

☐ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE | INCOME (yours, not spouse's) |
|---|---|---|
| 1. 2011 | Yale University - part-time teaching | $159,152.00 |
| 2. 2011 | Yale University Press - royalties for previously written book | $576.77 |
| 3. 2011 | W.W. Norton & Co. - royalties for previously written book | $182.51 |
| 4. 2011 | Author's Registry - Copyright payments for previously written books, etc. | $208.05 |
| 5. 2011 | Harvard University Press - royalties for previously written book | $181.31 |

### B. Spouse's Non-Investment Income - *If you were married during any portion of the reporting year, complete this section.*
*(Dollar amount not required except for honoraria.)*

☑ NONE *(No reportable non-investment income.)*

| DATE | SOURCE AND TYPE |
|---|---|
| 1. | |
| 2. | |
| 3. | |
| 4. | |

## IV. REIMBURSEMENTS — *transportation, lodging, food, entertainment.*
*(Includes those to spouse and dependent children; see pp. 25-27 of filing instructions.)*

☐ NONE *(No reportable reimbursements.)*

| | SOURCE | DATES | LOCATION | PURPOSE | ITEMS PAID OR PROVIDED |
|---|---|---|---|---|---|
| 1. | Centro Nazionale di Prevenzione e Difesa | 01/18/11 | Milan, Italy | Academic Meeting | Travel |
| 2. | Academia dei Lincci, Consiglio Nazionale Forense | 01/20/11 - 01/21/11 | Rome, Italy | Lecture | Travel, food, lodging |
| 3. | Yale University Law School | 01/31/11 | New Haven, CT | Lecture | Travel |
| 4. | Scuola Normale di Pisa; Bocconi University of Milan | 03/03/11 | Pisa, Italy | Lecture | Travel, food, lodging |

| 5. | Centro Nazionale di Prevenzione e Difensa | 03/07/11 | Milan, Italy | Academic Meeting | Travel |
|---|---|---|---|---|---|
| 6. | Aspen Institute Italia | 03/11/11 - 03/12/11 | Cernobbio, Italy | Academic Meeting | Travel, food, lodging |
| 7. | Yale University Law School | 04/10/11 | New Haven, CT | Class Party | Food |
| 8. | Yale University Law School | 4/20/11 | New Haven, CT | Academic Meeting | Travel |
| 9. | International University College; Aspen Institute, Italia | 05/17/11 - 05/19/11 | Turin, Italy | Lectures | Travel, food, lodging |
| 10. | Canadian Institute for Advanced Legal Studies | 07/10/11 - 07/12/11 | Cambridge, England | Lecture | Travel, food, lodging |
| 11. | Istituto Italiano di Cultura | 09/20/11 | New York, NY | Lecture | Travel |
| 12. | CARIPLO Foundatio, Centro Nazionale di Prevenzione e Difesa | 10/27/11 - 10/28/11 | Milan, Italy | Lecture | Travel, food, lodging |
| 13. | University of Florence | 11/04/11 | Florence, Italy | Lecture | Travel, food |
| 14. | Yale University Law School | 11/07/11 | Woodbridge, CT | Class Picnic | Food |
| 15. | Aspen Institute, Italia | 11/18/11 - 11/19/11 | Florence, Italy | Academic Meeting | Travel, food, lodging |

| Name of Person Reporting | Date of Report |
|---|---|
| Calabresi, Guido | 07/18/2012 |

## V. GIFTS. *(Includes those to spouse and dependent children; see pp. 28-31 of filing instructions.)*

☑  NONE *(No reportable gifts.)*

| | SOURCE | DESCRIPTION | VALUE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

## VI. LIABILITIES. *(Includes those of spouse and dependent children; see pp. 32-33 of filing instructions.)*

☑  NONE *(No reportable liabilities.)*

| | CREDITOR | DESCRIPTION | VALUE CODE |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |
| 4. | | | |
| 5. | | | |

| Name of Person Reporting | Date of Report |
|---|---|
| Calabresi, Guido | 07/18/2012 |

## VII. INVESTMENTS and TRUSTS -- income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)

☐ NONE (No reportable income, assets, or transactions.)

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 1. Mass Mutual (whole life) Insurance | B | Dividend | L | T | | | | | |
| 2. New York Life (whole life) Insurance | A | Dividend | L | T | | | | | |
| 3. AIG Sun America (whole life) Insurance | | None | K | T | | | | | |
| 4. House and adjacent lot - Bethany, CT- for investment purpose | D | Rent | O | W | | | | | |
| 5. Bank of America checking account | A | Interest | M | T | | | | | |
| 6. Bank of America IMMA account | A | Interest | K | T | | | | | |
| 7. Intesa - San Paolo, checking account | A | Interest | K | T | | | | | |
| 8. Merrill Lynch Bank & Trust USA - cash | B | Interest | M | T | | | | | |
| 9. I Shares T S&P 500 (mutual fund) @ Merrill Lynch | D | Dividend | N | T | | | | | |
| 10. I Shares T S&P Mid-Cap M400 (mutual fund) @ Merrill Lynch | D | Dividend | P1 | T | | | | | |
| 11. American Growth Fund Mutual Fund @ Merrill Lynch | D | Dividend | P1 | T | | | | | |
| 12. Trust #1, income beneficiary | G | Int./Div. | P2 | T | | | | | |
| 13. --First Am. Tax Free Oblig Fund (cash equiv.) | | | | | | | | | |
| 14. --Nuveen Mid Cap Select Fund (mutual fund) | | | | | | | | | |
| 15. --Nuveen International Fund (mutual fund) | | | | | | | | | |
| 16. --Nuveen International Select Fund (mutual fund) | | | | | | | | | |
| 17. --General Mills (common) | | | | | | | | | |

1. Income Gain Codes:    A =$1,000 or less    B =$1,001 - $2,500    C =$2,501 - $5,000    D =$5,001 - $15,000    E =$15,001 - $50,000
(See Columns B1 and D4)    F =$50,001 - $100,000    G =$100,001 - $1,000,000    H1 =$1,000,001 - $5,000,000    H2 =More than $5,000,000
2. Value Codes    J =$15,000 or less    K =$15,001 - $50,000    L =$50,001 - $100,000    M =$100,001 - $250,000
(See Columns C1 and D3)    N =$250,001 - $500,000    O =$500,001 - $1,000,000    P1 =$1,000,001 - $5,000,000    P2 =$5,000,001 - $25,000,000
   P3 =$25,000,001 - $50,000,000    P4 =More than $50,000,000
3. Value Method Codes    Q =Appraisal    R =Cost (Real Estate Only)    S =Assessment    T =Cash Market
(See Column C2)    U =Book Value    V =Other    W =Estimated

| Name of Person Reporting | Date of Report |
|---|---|
| Calabresi, Guido | 07/18/2012 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 18. --American Funds: Investment Co. of America (mutual fund) | | | | | | | | | |
| 19. Trust #2, income beneficiary | F | Int./Div. | P1 | T | | | | | |
| 20. --First Am. Tax Free Oblig. Fund (cash equiv.) | | | | | | | | | |
| 21. --Imation Corp (common) | | | | | Sold | 06/28/11 | J | D | |
| 22. --American Funds: Investment Co. of America (mutual fund) | | | | | | | | | |
| 23. --Minnesota Mining & Mfg. (common) | | | | | | | | | |
| 24. --Nuveen Small Cap Fund (mutual fund) | | | | | | | | | |
| 25. --Nuveen Mid-Cap Select Fund Cl Y (mutual fund) FATIX | | | | | | | | | |
| 26. --Nuveen, International Fund (mutual fund) | | | | | | | | | |
| 27. --Nuveen International Select Fund (mutual fund) | | | | | | | | | |
| 28. Trust #3, income beneficiary | | None | P2 | T | | | | | |
| 29. --Darden Restaurants (common) | | | | | | | | | |
| 30. --Exxon (common) | | | | | | | | | |
| 31. --General Mills (common) | | | | | | | | | |
| 32. --IBM (common) | | | | | | | | | |
| 33. --JP Morgan (common) | | | | | | | | | |
| 34. --AT&T Inc. (common) | | | | | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

| Name of Person Reporting | Date of Report |
|---|---|
| Calabresi, Guido | 07/18/2012 |

## VII. INVESTMENTS and TRUSTS -- *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 35. --US Bancorp (common) | | | | | | | | | |
| 36. --American Funds: Invesment Co. of America (mutual fund) | | | | | | | | | |
| 37. --Merrill Lynch Bank & Trust USA - cash | | | | | | | | | |
| 38. --Thorium Ltd (common) | | | | | | | | | |
| 39. --Am. Growth Fund ( mutual fund) | | | | | | | | | |
| 40. --Am. Euro Pacific Growth Fund (mutual fund) | | | | | | | | | |
| 41. Trust #4, income beneficiary | None | P1 | T | | | | | | |
| 42. --Merrill Lynch Bank USA - CMA Money Fund (cash equiv.) | | | | | | | | | |
| 43. --I Shares T S&P 500 (mutual fund) | | | | | | | | | |
| 44. Trust #5, income beneficiary | None | P1 | T | | | | | | |
| 45. --Bank of America (common) | | | | | | | | | |
| 46. --Morgan Stanley Emerging Market Fd. (mutual fund) | | | | | | | | | |
| 47. --Bank of America checking account - Cash | | | | | | | | | |
| 48. Guido Calabresi Retirement, TIAA-CREF | None | P1 | T | | | | | | |
| 49. Bank of America (common) @ Merrill Lynch | A | Dividend | N | T | | | | | |
| 50. Trust #6, income beneficiary | F | Int./Div. | P1 | T | | | | | |
| 51. --Grantham, Mayo, Van Otterloo (mutual funds) | | | | | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less F =$50,001 - $100,000 | B =$1,001 - $2,500 G =$100,001 - $1,000,000 | C =$2,501 - $5,000 H1 =$1,000,001 - $5,000,000 | D =$5,001 - $15,000 H2 =More than $5,000,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less N =$250,001 - $500,000 P3 =$25,000,001 - $50,000,000 | K =$15,001 - $50,000 O =$500,001 - $1,000,000 | L =$50,001 - $100,000 P1 =$1,000,001 - $5,000,000 P4 =More than $50,000,000 | M =$100,001 - $250,000 P2 =$5,000,001 - $25,000,000 | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal U =Book Value | R =Cost (Real Estate Only) V =Other | S =Assessment W =Estimated | T =Cash Market | |

| Name of Person Reporting | Date of Report |
|---|---|
| Calabresi, Guido | 07/18/2012 |

## VII. INVESTMENTS and TRUSTS — *income, value, transactions (Includes those of spouse and dependent children; see pp. 34-60 of filing instructions.)*

☐ NONE *(No reportable income, assets, or transactions.)*

| A. Description of Assets (including trust assets) Place "(X)" after each asset exempt from prior disclosure | B. Income during reporting period | | C. Gross value at end of reporting period | | D. Transactions during reporting period | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | (1) Amount Code 1 (A-H) | (2) Type (e.g., div., rent, or int.) | (1) Value Code 2 (J-P) | (2) Value Method Code 3 (Q-W) | (1) Type (e.g., buy, sell, redemption) | (2) Date mm/dd/yy | (3) Value Code 2 (J-P) | (4) Gain Code 1 (A-H) | (5) Identity of buyer/seller (if private transaction) |
| 52. American Funds: Investment Co. of America (mutual fund) | A | Dividend | J | T | | | | | |
| 53. Citigroup Inc. (common) @ Merrill Lynch | A | Dividend | M | T | | | | | |

| 1. Income Gain Codes: (See Columns B1 and D4) | A =$1,000 or less | B =$1,001 - $2,500 | C =$2,501 - $5,000 | D =$5,001 - $15,000 | E =$15,001 - $50,000 |
|---|---|---|---|---|---|
| | F =$50,001 - $100,000 | G =$100,001 - $1,000,000 | H1 =$1,000,001 - $5,000,000 | H2 =More than $5,000,000 | |
| 2. Value Codes (See Columns C1 and D3) | J =$15,000 or less | K =$15,001 - $50,000 | L =$50,001 - $100,000 | M =$100,001 - $250,000 | |
| | N =$250,001 - $500,000 | O =$500,001 - $1,000,000 | P1 =$1,000,001 - $5,000,000 | P2 =$5,000,001 - $25,000,000 | |
| | P3 =$25,000,001 - $50,000,000 | | P4 =More than $50,000,000 | | |
| 3. Value Method Codes (See Column C2) | Q =Appraisal | R =Cost (Real Estate Only) | S =Assessment | T =Cash Market | |
| | U =Book Value | V =Other | W =Estimated | | |

## VIII. ADDITIONAL INFORMATION OR EXPLANATIONS. *(Indicate part of report.)*

Part 1. POSITIONS

Line 4- Assets of the Carolyn Foundation are not listed because my position as Trustee is "Honarary" only. I have no functional responsibilities with regard to the foundation.

Part VII INVESTMENTS AND TRUSTS

I have not included ⬜ in Connecticut and its adjacent land; an apartment and caretaker's apartment and an olive grove in ⬜ held for vacation trips and not for investment or the production of income and a fishing camp in ⬜ held for vacation trips and not for investment or the production of income. Nor did I include land in ⬜ near the above mentioned fishing camp, which a ⬜ and I purchased in 2007 and on which we placed a conservation easement to protect it in perpetuity.

Part VII Asset #14 was formerly known as the First American Sm Mid Cap Core Fund. The name changed during 2011 to Nuveen Mid Cap Select Fund.
Part VII Assets #15 and #26 were formerly known as the First American International Fund. The name changed during 2011 to Nuveen International Fund.
Part VII Asset #16 and #27 were formerly known as the First American International Select Fund. The name changed during 2011 to Nuveen International Select Fund.
Part VII Asset #24 was formerly known as the First American Small Cap Fund. The name changed during 2011 to Nuveen Small Cap Fund.

Trusts #3, #4, and #5 in Part VII (Assets #28, #41, and #44) and the retirement account described in Part VII #48 did not distribute any income to me or to an ⬜ Income was earned and not distributed.

Trust #6 (Asset #50) in Part VII is a Charitable Remainder Unitrust established in 1995 by ⬜ me.. The ⬜ I are 5.5% income beneficiaries during our lives or 20 years, whichever is longer. The trustee is instructed to invest the money in widely diversified mutual or money market funds.

# IX. CERTIFICATION.

I certify that all information given above (including information pertaining to my spouse and minor or dependent children, if any) is accurate, true, and complete to the best of my knowledge and belief, and that any information not reported was withheld because it met applicable statutory provisions permitting non-disclosure.

I further certify that earned income from outside employment and honoraria and the acceptance of gifts which have been reported are in compliance with the provisions of 5 U.S.C. app. § 501 et. seq., 5 U.S.C. § 7353, and Judicial Conference regulations.

Signature: s/ Guido Calabresi

NOTE: ANY INDIVIDUAL WHO KNOWINGLY AND WILLFULLY FALSIFIES OR FAILS TO FILE THIS REPORT MAY BE SUBJECT TO CIVIL AND CRIMINAL SANCTIONS (5 U.S.C. app. § 104)

Committee on Financial Disclosure
Administrative Office of the United States Courts
Suite 2-301
One Columbus Circle, N.E.
Washington, D.C. 20544

To: Guido Calabresi

From: Stephen Yandle

Date: February 3, 1994

Re: Retirement benefits


Tenured members of the Faculty upon retirement may elect to continue teaching and other activities at the School on a part-time basis. In accordance with usual curricular processes retired professors may teach one half time or less. Faculty members electing to teach half time may offer up to one course in each semester of the academic year or, by arrangement with the Dean, two courses in one term followed by a term in which they offer no courses. The part-time privileges and responsibilities will continue without term, but subject to the standards for continuation applied to non-retired, tenured faculty members.

Retired faculty must take up a reduced teaching assignment within two years of the date of their retirement and may not interrupt their teaching for longer than two academic years without forfeiting their appointments. Retired faculty who elect to teach part-time will designated as Professorial Lecturers. Appropriate compensation for part-time teaching is determined by the Dean.

After retirement faculty continue to receive various forms of support. The support may depend on whether the faculty member continues to teach.

Offices.

Upon retirement faculty members will leave the larger offices that they may occupy and will lose their position on the office seniority list, but will be provided other office space.

Secretarial

Retired faculty will continue to receive secretarial support, but at a reduced level. In general, Professorial Lecturers would receive half the usual allocation for full time faculty.

Leaves

Retired faculty who continue to teach can be granted triennial leave proportionate to the amount of teaching they are doing (e.g. A Professorial Lecturer who is teaching a course a semester could receive a semester triennial leave every three years. Pay for the leave would be equal to the amount that the faculty member would have received for teaching that

discretion of the dean with the approval of the Provost.

Retired faculty may "carry forward" their scheduled leaves from pre-retirement, but only as to the timing of the next leave due, which must conform to the stipulation above (e.g. A faculty member who had no leave for two years prior to retirement and who started teaching a course a semester after retirement would be eligible for a paid leave in the second semester of retirement, but the pay would be in the amount of the salary that would have been paid for teaching a course in that semester).

## Summer Stipends

Retired faculty are not eligible for summer stipends.

## Research Assistants

Retired faculty may receive the same type of research support as full time faculty. Requests for research assistants and travel must be submitted to the dean for approval. Other support requests - computers, duplicating, etc. - would be processed through existing administrative procedures with non-routine approval being referred to the dean. General support from the library and its staff will be available. Book purchase requests should be directed to the Librarian. 'All of these procedures are identical to those in place for full time faculty.

## Salary

Salary will be negotiated individually with the dean, but as a general guideline Professorial Lecturers who teach a course each semester after retirement will receive one quarter of their pre-retirement salary. That salary will be reviewed annually and Professorial Lecturers will be eligible for increases. Increases will generally be limited to the University figure for tenured faculty.

## University Benefits

### General

University benefits hinge on whether the faculty member is "half time or more", which is defined precisely as 50% or more.

### Retirement Contribution

The Law School will make contributions to retirement funds for Professorial Lecturers to the extent possible given the University's formula for completion of contributions to retirement funds. The operation of the formula can vary by individual, but it is highly likely that Law School faculty serving as Professorial Lecturers will have completed contributions to retirement funds prior to serving as Professorial Lecturers. For faculty who had fifteen years of service at Yale prior to July 1, 1993, contributions to retirement accounts at the regular annual formula will not cease before age 70.

## Medical Benefits

Yale faculty with 30 years of service are eligible for post-retirement medical coverage comparable to that provided full time faculty. Faculty with less than 30 years of service receive a pro rata benefit based on years of service. The coverage, while comparable, is different as it is designed to take advantage of Medicare benefits. Faculty who are classified as 50% or more are eligible for the regular faculty health coverage.

Under current policy if a faculty member is classified as 50% or more, he or she is not eligible for retirement health coverage even if he or she meets the age and term of service requirements because Medicare regulations stipulate that anyone who is entitled to regular health benefits from their employer must receive that benefit rather than Medicare so retired faculty listed as 50% or more would be covered under the regular faculty medical plan.

## Dental Insurance

There is no University contribution to the Dental Plan, but still the plan is available only to faculty who are half time or more.

## Long-term Disability

Faculty classified as 50% or more are eligible for coverage under the University's long-term disability program. The benefits of that program terminate at age 70.

## Flexible Benefits

The University requires that a faculty member be employed 50% or more to participate in the flexible benefits program.

## Group Life Insurance

Faculty members may participate in the group life insurance plan if employed half time or more. If employed less than half time, the group life insurance can be converted to a whole life policy.

## Benefits Dollars

Faculty working half time or more receive $27 per month which can be applied to faculty paid benefits or accepted as taxable income.

## Scholarship Plan for Sons and Daughters

The benefit is available to all retired faculty who meet the length of service requirement -- six continuous years prior to receiving the benefit or four continuous years prior and eight years of total service.

## Early retirement

For faculty who retire at age 62 or over with at least 15 years of service and before the "normal retirement age of 70" will be eligible to receive from the University a cash benefit. The benefit equals 60% of the participant's three year final average salary plus 2% for each year of service with the University over 15, or, if less, the amount that would be required to purchase an annuity that would bridge the difference between the annuity which could be purchased with the participant's Yale retirement account balance at the date of early retirement and the annuity which could be purchased with that account balance projected (at 4%) to "normal retirement age." For the purpose of the foregoing, amounts in the account balance in excess of six times salary will be excluded for the calculations.



*Fed Ex* | *Home Financial*

**Guido Calabresi <calabresi.guido@gmail.com>**

---

## (no subject)

4 messages                                          ATTACHMENT   B

---

**Guido Calabrosi <Guido.Calabresi@yale.edu>**                    **Wed, Jan 11, 2012 at 4:24 PM**
To: Robert Post <robert.c.post@yale.edu>

Dear Robert,
I am sending this as a follow-up on the telephone conversation we had
about my teaching over the next years. When I went senior as a judge,
Harold asked if I would be willing to give up the Professorial
Lectureship arrangement that was in place, and which I had taken up
when I became a judge. In lieu of that, he offered the following:

(1) I would teach up to half time and be compensated at 49% of the
top salary level for three years.

(2) I would subsequently teach up to 25% and paid at 25% of the top
salary for 7 years more.

(3) I could then continue teaching as long as I wished, but only in
non-required courses which were graded on a Credit-Fail basis, and
this teaching would not be compensated. (This third, could always be
modified by the Dean and, if appropriate, the faculty, "if, despite my
dotage, there were need for more on my part.")


The academic year 2011-2012 marks the end of the three year, half-time
period. From my conversation with Doug Kysar, and you, as well as the
continued need for a Torts teacher and my apparent capacity still to
do that teaching well, it would seem to make sense for me to continue
on the 50% track. My preference (in order to do good planning, and
given the conversations that people at other schools have had with
me) would be if we could leave the half-time arrangement in place for
5 years. This would always be subject to health, etc., and any
reduced teaching would be accompanied by an equivalent reduction in
compensation.

I would then go to quarter time for 3 years (this adds one year in
total to the 10 years that Harold had offered). Thereafter, I would
be able to continue teaching non-required, Credit-Fail courses on an
uncompensated basis, indefinitely, as in the original agreement.

I would, if it were possible, like to add one other thing. In the
original Professorial Lectureship arrangements, I was eligible for
triennial leaves. I never took such a leave because, given my reduced
teaching, I hated to miss out on students. Indeed, I haven't had a
triennial leave in more than 26 years, i.e., since before I became
Dean. Because I am now back to doing some longer writing, it might
become desirable for me to be able to get a free term now and then; I
doubt it. But it would be nice if the arrangement did provide that I
could get up to two "triennial leaves" over the next 8 years.

Does this sound OK to you?

Affectionately,

Guido

(HARD COPY TO FOLLOW)

---

**Post, Robert <robert.post@yale.edu>**                                    **Wed, Jan 18, 2012 at 5:30 PM**
To: Guido Calabresi <Guido.Calabresi@yale.edu>, "robert.c.post@yale.edu" <robert.c.post@yale.edu>

Guido: I'm sorry for not getting back to you on this sooner. I've been
traveling in CA—tending to my parents, etc.—and have only sporadic
access to the internet. Your email was sent to my official account, and so
was not readily available. Of course this is fine—we shall be lucky if
you can teach here for decades.... R


Robert Post
Dean and Sol & Lillian Goldman Professor of Law
Yale Law School
127 Wall Street
PO Box 208215
New Haven, CT 06520-8215
Robert.C.Post@yale.edu
[Quoted text hidden]

---

**Guido Calabresi <Guido.Calabresi@yale.edu>**                            **Thu, Jan 19, 2012 at 12:49 PM**
To: "Post, Robert" <robert.post@yale.edu>

Dear Robert,

THANKS VERY much. I hope I can do good service for a long time for the school I love.

Affectionately,

Guido


On Wed, Jan 18, 2012 at 5:30 PM, Post, Robert <robert.post@yale.edu> wrote:


https://mail.google.com/mail/u/0/?ui=2&ik=5d15934d4f&view=pt&search=inbox&th=134...   1/19/2012